# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
      Pink Apple iPhone )    Case No.   '21 MJ02162
    DEA SSEE S001380501 )
      (Target Device 1) )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated herein by reference.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841(a)(1) | Possession and Distribution of Controlled Substances |
| 21 USC Sec. 846 | Conspiracy |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jorge Contreras, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means)*.

Date:   June 1, 2021

*Judge's signature*

City and state: San Diego, California    Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Pink Apple i-Phone
SN: F17WQU2NJWLM
DEA SSEE S001380501
(Target Device)



The Target Device is currently in the possession of the Drug Enforcement Administration (DEA) located at 4560 Viewridge Avenue, San Diego, CA 92123

## **ATTACHMENT B**
## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Device will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, web history, files, metadata, photographs, audio files, videos, and location data, for the period of December 28, 2020, up to and including May 28, 2021:

    a.    tending to indicate efforts to possess with the intent to distribute controlled substances within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the distribution of and/or the possession with the intent to distribute controlled substances within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the distribution of and/or the possession with intent to distribute of methamphetamine or other controlled substances within the United States;

    d.    tending to identify travel to or presence at locations involved in the distribution of or possession with intent to distribute controlled substances within the United States, such as stash houses, residences used to prepare or process controlled substances, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of 21, U.S.C., §§ 841, 846.



# AFFIDAVIT

I, Special Agent Jorge Contreras, having been duly sworn, declare and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device:

Pink Apple iPhone
SN: F17WQU2NJWLM
DEA SSEE S001380501
(Target Device)

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section 841(a)(1), Possession and Distribution of Controlled Substances, and Section 846, Conspiracy, as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Alejandra MORENO (MORENO) for possession, with intent to distribute, approximately 63.8 pounds of methamphetamine. The Target Device is currently stored as evidence at the Drug Enforcement Administration (DEA) located at 4560 Viewridge Avenue, San Diego, CA 92123.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with DEA since October of 2018. I am currently assigned to the San Diego Field Division (SDFD), Organized Crime Drug Enforcement Task Force ("OCDETF") Strike Force Group 3. I am a graduate of the DEA Academy in Quantico, Virginia.

4. During my tenure with DEA, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry and those who possesses and distribute narcotics within and throughout the United States.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones and other portable electronic devices (such as Laptops, iPads, Tablets, etc.). A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual(s) responsible for importing and/or transporting the concealed narcotics in the United States. These communications can occur before, during and after the narcotics are imported into the United States and transported therein. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with co-conspirators immediately prior to and following their illicit transactions to negotiate prices and quantities, coordinate meeting times and locations, discuss the transportation through checkpoints, and then to discuss future transactions or

future payments if the narcotics were "fronted" (delivered without being paid for in advance).

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) and other portable electronic devices (such as Laptops, iPads, Tablets, etc.) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones and other portable electronic devices (such as Laptops, iPads, Tablets, etc.) of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to possess with the intent to distribute controlled substances within the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the distribution of and/or the possession with the intent to distribute controlled substances within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in the distribution of and/or the possession with intent to distribute of controlled substances within the United States;

    d. tending to identify travel to or presence at locations involved in the distribution of or possession with intent to distribute controlled substances within the United States, such as stash houses, residences used to prepare or process controlled substances, load houses, or delivery points;

3

   e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On May 28, 2021, the United States Border Patrol Checkpoint on California Highway 86 near Westmoreland, California was fully operational with all lights and signs in place.

8. On May 28, 2021, at approximately 10:45 a.m., Alejandra MORENO, driving a blue Hyundai Santa Fe bearing California license 7FQB416, entered the Highway 86 Westmoreland, CA, U.S. Border Patrol Check Point attempting to proceed northbound on Highway 86.

9. During a controlled stopped inquiry, a Border Patrol Agent (BPA) conducted a pre-primary inspection canine sniff around the brown Hyundai Santa Fe and alerted at the rear of the vehicle. The vehicle was registered to MORENO. The BPA referred the vehicle and the driver MORENO to secondary inspection.

10. In the secondary inspection area at the Highway 86 Westmoreland Check Point, a BPA asked MORENO to step out of the vehicle and obtained consent from MORENO for a vehicle search. MORENO stated she was coming from EL Centro, California, headed to work at the Jack in the Box in Salton city, California.

11. A Border Patrol canine alerted to the rear cargo floor of the Hyundai. During the inspection of the vehicle, BPAs observed fresh tooling on the screws that hold down the factory plastic located on the floor of the rear cargo compartment. BPA's proceeded to remove the screws and plastic covering, which revealed a large bundle wrapped in a shiny aluminum tape. A probe into the bundle exposed a white crystal-like substance, consistent with crystal methamphetamine. The white crystal-like substance

tested presumptively positive for properties and characteristics of methamphetamine with an approximate seized weight of 28.9 kilograms (63.8 pounds).

12. During post-Miranda post-arrest questioning, MORENO stated that she was coming from Mexicali, Mexico and on her way to a restaurant in Coachella, CA. MORENO stated she was instructed by her boyfriend to drive the car to the restaurant in Coachella, park the car, and leave the car unlocked with the keys inside the glove box. MORENO would then distance herself from the car and pass time in the nearby area until she was instructed that the car was ready for her again. At that point MORENO would drive to work and after her shift she would return to Mexicali, Mexico. MORENO stated her boyfriend has asked her to do this route twice in the past and assured her that nothing would happen. Additionally, MORENO's boyfriend tracks MORENO's live location during her travels in the United States. MORENO acknowledged that her activities are suspicious and stated she believed she was transporting "Facturas" (Spanish for documents). MORENO informed agents that this was the third time she has delivered "facturas" for her boyfriend, however, did not provided specific dates of the prior events. MORENO informed agents that they could possibly locate those dates from a search of her phone (Target Device).

13. MORENO stated that she was not coerced or threatened to smuggle the controlled substance.

14. MORENO was arrested for violation of Title 21, U.S.C., Section 841(a)(1), possession with intent to distribute methamphetamine.

15. The Target Device was found in MORENO's possession at the time of his arrest. MORENO admitted to possession of the Target Device and provided consent for investigating agents to conduct a search of the Target Device.

16. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names,

5

electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the distribution of illicit narcotics within the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug trafficking event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their trafficking activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on December 28, 2020, up to and including May 28, 2021.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.

6

acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the Target Device and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

20. At the time of arrest, MORENO provided agents with consent to search the Target Device. The phone was accessed and a cursory review was conducted including recent calls. No additional searching of the phone was conducted. The search warrant is being requested to conduct a full download of the Target Device because it may contain additional evidence of drug trafficking.

**CONCLUSION**

21. Based on all of the facts and information described above, my training and experience, and consultations with other law enforcement officers, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Section 841, Possession and Distribution of Controlled Substances, and Section 846, Conspiracy. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Jorge Contreras
Drug Enforcement Administration

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 1st day of June, 2021.

_____
HON. BARBARA L. MAJOR
UNITED STATES MAGISTRATE JUDGE

8